IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                      Case No. 15-10102-JTM

HUMPHREY EZEKIEL ETENYI,

    Defendant.

MEMORANDUM AND ORDER

The government has charged defendant Humphrey Ezekiel Etenyi, a citizen of Kenya, with possession and use of false documents, aiding the unlawful production of an identification document, aggravated identity theft, making a false statement to the government, and hampering departure from the United States.[1] The defendant has moved to suppress certain statements he made to federal immigration officers, and the court conducted a hearing in which the government presented testimony relating to those statements. As indicated at the hearing, the court finds that the motion to suppress should be denied.

Etenyi was admitted to the United States on a student visa in 2006. He married a

---

[1] In violation of, respectively, 18 U.S.C. §§ 1546(a), 1028(a)(1), 1028A(a)(1)), 1001(a)(2), and 8 U.S.C. § 1253(a)(1)(C).

United States citizen, and petitioned to become a lawful permanent resident. The application was rejected after the government determined that Etenyi had falsely claimed to be a United States citizen in an employment application. On August 28, 2013, an Immigration Judge ordered that Etenyi be removed from the United States. Etenyi's appeals have been exhausted, and the order of removal became final February 9, 2015.

Immigration and Customs Enforcement agents arrested Etenyi on February 10, 2015, and he remained in their custody until his initial appearance on July 24, 2015.

ICE Enforcement Removal Office (ERO) agents spoke with Etenyi on three occasions while he was in custody. On Februrary 10, while the officers were arresting Etenyi at his apartment in order to remove him from the United States, the agents asked about his Kenyan passport. Etenyi refused to produce the passport, and refused permission of the agents to look for it. Etenyi said then said the passport was at his brother's house. He was allowed to speak with his immigration attorney, Jennifer Idanez Whitlock, on the telephone at the apartment. After he was taken to ERO's offices, Etenyi also spoke the same day over the telephone with Kansas Department of Revenue Special Agent Aaron Simmons.

On May 11, 2015, ERO agents transported Etenyi from the Chase County Jail to their office in Wichita, Kansas, for a Custody Review Determination. While at the ERO offices, agents asked Etenyi for his passport. He said the passport was in his residence — not his brother's. The ERO agents again contacted Whitlock during the review.

ERO agents next returned Etenyi to their office on May 21, 2015, seeking to address issues raised by Etenyi's attorney in an email three days earlier. Whitlock wrote that

Entenyi had agreed to help the agents obtain the passport, and she was on a speaker phone during the interview. However, when the agents asked Etenyi where his passport was, he stated he did not know. Asked if he was willing to go to his residence to help the officers find it, or to provide a key to the house, he refused to respond

On May 27, 2015, ERO agents served a Notice for Failure to Comply to Etenyi at the Butler County Jail for failing to produce his passport. The agents again asked Etenyi about the location of his passport. Etneyi told the officers that his residence had been burglarized, and that that the passport was perhaps stolen during the burglary.

The defendant's motion stresses that in each of these encounters, Etenyi was not advised of his *Miranda* rights, and was not free to leave. Acknowledging that the defendant's attorney was present for the interviews, the motion argues that the court should suppress any statements made by Etenyi prior to the time the telephone connection was made.

In its response, the government does not argue that the questioning occurred in a noncustodial environment.[2] Rather, the government argues, the statements made by Etenyi while in custody do not violate *Miranda v. Arizona*, 384 U.S. 436, 448-50 (1966) because they were not the subject of an interrogation. For purposes of the Miranda rule, interrogation means "words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291,

---

[2] The government notes the conversation between Agent Simmons and Etenyi, but states that it has no intention of introducing in its case in chief any comments made by the defendant to the Kansas Department of Revenue officer.

300-01 (1980). Whether interrogation occurred is an objective test, viewed from the standpoint of a reasonable person in the defendant's position. *United States v. Gay*, 774 F.2d 368, 379 n. 22 (10th Cir. 1985).

Questions about identity, age, and address usually do not constitute interrogation. *United States v. Cronin*, 540 F.Supp.2d 1189 n. 5 (D. Kan. 2008) (citing *United States v. Washington*, 462 F.3d 1124, 1132–33 (9th Cir.2006)). *See, e.g., Rosa v. McCray*, 396 F.3d 210, 221 (2d Cir.2005) ("The collection of biographical or pedigree information through a law enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest, however, does not ordinarily implicate the prophylactic protections of Miranda, which are designed to protect a suspect only during investigative custodial interrogation. Such interrogations customarily involve questions of a different character than those that are normally and reasonably related to police administrative concerns.").

In order to remove a person from the United States, the government must obtain the person's original passport, or obtain other travel documents. Under 8 U.S.C. § 1253(a)(1)(C), it is a felony for a person subject to a removal to "take[] ... any ... action ... designed to prevent or hamper [their] departure." As the holder of a Kenyan passport, Etenyi was thus legally obligated to aid the officers in finding the passport. *See United States v. Adeyinka*, 2006 WL 3253631, *2 (5th Cir. 2006) ("The Immigration and Nationality Act... makes it a crime to refuse to assist in the acquisition of travel documents for the purpose of removal.").

4

Kenya will not accept a deportee without a passport or a substitute travel document. An application for a substitute travel document can take up to a year if processed through Nairobi. In contrast, an expired passport can be processed by the Kenyan embassy in the United States in a few months. And an unexpired passport can be processed in about ten days.

The ERO agents were authorized to ask for Etenyi's passport; he was legally obligated to help them obtain in it. Nothing in the evidence indicates that the officers asked for anything other than the location of the passport, or whether Etenyi would help them obtain it. There was nothing in the questioning which would cause a reasonable person in Etenyi's position to see it as an attempt to obtain incriminating information by not only refusing to comply, but by supplying inconsistent and false statements as to the location of the passport.

"[R]outine booking question[s] ... to secure the biographical data necessary to complete booking or pretrial services" are exempt from Miranda's coverage. *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). "The collection of biographical or pedigree information through a law enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest ... does not ordinarily implicate the prophylactic protections of *Miranda*, which are designed to protect a suspect only during investigative custodial interrogation. Such interrogations customarily involve questions of a different character than those that are normally and reasonably related to police administrative concerns." *Rosa v. McCray*, 396 F.3d 210, 221 (2d Cir.2005) (citing *Muniz*, 496 U.S. at 601–02).

In the context of the execution of a lawful removal order, obtaining the subject's travel documents reflects a similar administrative concern in effecting the removal. There is no indication at the present time that the officers were interested in obtaining evidence of any crime, or in doing anything beyond getting Etenyi out of the country. *See United States v. Rodriguez*, 356 F.3d 254, 260 (2d Cir. 2004) (INS questioning as to detainee's citizenship, for purposes of determining eligibility for administrative deportation, was not interrogation for purposes of *Miranda*, where "[t]here is nothing in the record to indicate that Agent Smith knew or should have known that evidence for an eventual prosecution would emerge from his administrative interview of Rodriguez").

IT IS ACCORDINGLY ORDERED this 17th day of February, 2016, that the defendant's Motion to Suppress (Dkt. 29) is hereby denied.

                                                                       s/ J. Thomas Marten  
                                                                       J. THOMAS MARTEN, JUDGE