IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,
          Plaintiff,

      vs.                        Case No. 15-10102-JTM

HUMPHREY EZEKIEL ETENYI,
          Defendant.


MEMORANDUM AND ORDER

The government charged defendant Humphrey Etenyi with making a false statement, identity theft, and hindering deportation, and the jury convicted the defendant of all counts except for the charge of making a false statement. During the course of the trial, the defendant presented three motions seeking dismissal of the charges, and the court took these motions under advisement. Following the trial, defendant submitted a Motion for New Trial or for Judgment Notwithstanding the Verdict. (Dkt. 77).

In the first motion (Dkt. 65), the defendant seeks dismissal of Counts 2 and 3 of the Indictment, charging unlawful production (or aiding and abetting in the production) of an identification document, namely a Kansas driver's license, and the unlawful use and possession of a document used to support staying or employment in the United States, in violation of 18 U.S.C. § 1028(a)(1). The defendant argues that the driver's license can't meet the legal standard for Section 1028(a)(1) because it "was

produced solely by the Department of Revenue." (Motion, at 2). And aiding and abetting does not apply, the defendant argues, because "[t]here must be a shared criminal intent," which cannot be true here since "[t]he government's allegation appears to be that the defendant aided and abetted an employee of the Kansas Department of Revenue."  (*Id*. at 3). Thus, the defendant argues, since KDOR had no criminal intent, there could be no crime.

The court will deny the motion, as the term "production" as used in the statute is not narrow, and by ordinary construction would include "to cause to be produced." Further, Section 1028(d)(9) expressly provides that the term produce "includes alter, authenticate, or assemble." Here, the license was produced after someone agreed to the questions posed by the examiner -- that is, helped to authenticate it.

Moreover, there was substantial evidence from which the jury could conclude, with respect to 18 U.S.C. § 2, that the defendant aided and abetted the production of the unlawful document. A defendant may violate Section 1028 by helping to cause governmental clerk or other third person to issue a false identification. *See United States v. Jaensch*, 665 F.3d 83, 95 (4th Cir. 2011); *United States v. Rashwan*, 328 F.3d 160 (4th Cir.2003) (statute violated where drivers license produced following defendant's DMV application swore to a false Virginia address); *United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir. 1979).

The defendant's second motion (Dkt. 64) also seeks dismissal of Counts 2 and 3, arguing the evidence does not support any finding that the relevant documents were issued without "lawful authority." The defendant's motion cites no authority to support

2

the relief sought. Rather the motion simply suggests there was no crime because there was no "theft" of any information, stressing that "the very title of the code refers to 'theft' of identity." (Motion, at 2). Further, the license "was neither stolen nor obtained by any inappropriate means." (*Id.*)

Section 1028(a)(1) does not require proof of theft. The statute applies even if the person whose identity is unlawfully used has agreed to the imposture. *See United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185–86 (9th Cir. 2015). As to the suggestion that no crime can exist because KDOR personnel issued the document, the position was essentially rejected in *United States v. Luke*, 628 F.3d 114, 118-20 (4th Cir. 2010):

> Just as Rashwan (rather than the DMV clerk) could be convicted for producing an identification document without lawful authority, so too can Luke (rather than the passport officials) be convicted for conspiring to transfer an identification document produced without lawful authority. *Rashwan*, in other words, establishes that even when a clerk unknowingly creates a fraudulent identification document, that document has been produced without lawful authority.
>
> As the jury found, [defendant] knew perfectly well that the documents in question should never have been produced, *i.e.* that they could not be issued upon any lawful authority. Although the U.S. Passport Agency certainly has "authority" to issue U.S. passports, it must do so on a "lawful" basis, that is, on the basis of authentic documentation and in the name of the actual person who is applying for the passport.

*See also Rashwan*, 328 F.3d at 160.

In the present case, the evidence showed that the defendant went to the Kansas driver's license office and presented documents belonging to his brother. The defendant completed the application, and left the office with a driver's license with his photograph but his brother's name. The defendant's defense and explanation at trial, that he was

3

simply mistakenly trying to help his brother get his driver's license, ultimately turns on his credibility, which the jury was not required to accept. This is particularly true where there were substantial reasons for finding the explanation less than credible. The testimony from the agent administering the examination established that her inquiry of applicants is consistently detailed and thorough. The application process required the defendant to complete a vision test, and to sign his name above his brother's name. The jury could easily conclude that the defendant, who speaks fluent English and has an advanced college degree, did not obtain the false license by mistake.

The defendant's third motion (Dkt. 63) seeks dismissal of Counts 2 and 3, based on the argument that identity theft and aggravated identity theft are multipicitous because they are "continuous conduct." As an initial matter, even if true, this would simply mean that the defendant could not ultimately be punished for both offenses, if convicted of both. It does not mean that the court should dismiss both counts prior to any decision by the jury.

More importantly, this court has explicitly rejected the idea that the two offenses are multiplicitous. *See United States v. Galindo*, 2012 WL 1945142 (D. Kan. May 30, 2012) (finding aggravated identity theft charge not multiplicitous to underlying identity theft, as each required proof of unique elements).

In addition to these written motions presented during the trial, the defendant orally moved to dismiss all charges on the grounds that there was no evidence he had actually produced the document, which was not a counterfeit driver's license, but a legitimate document produced by the State of Kansas.

While the court refrained from explicitly denying defendant's oral motion during the trial, it also observed defendant's position was "a good jury argument," but that dismissal was not appropriate "given the state of the evidence." This conclusion was correct. As noted earlier, the relevant case law holds § 1028 is broad enough to include knowingly undertaking actions to cause government officials to generate false identification documents.

Considered in the light most favorable to the government, a rational trier of fact could have found, from the direct and circumstantial evidence and with reasonable inferences drawn therefrom, that the essential elements of Counts 2, 3, and 4 were established beyond a reasonable doubt. *See United States v. McIntosh*, 124 F.3d 1330, 1334 (10th Cir. 1997).

The court may reverse a jury's verdict only if no reasonable juror could have found the defendant guilty. *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015). "[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *Id*. at 1112 (internal quotation marks and citation omitted). "[W]here conflicting evidence exists" the court must "not question the jury's conclusions regarding the credibility of witnesses or the relative weight of evidence." *Id*. Instead, the court simply must "'determine whether [the] evidence, if believed, would establish each element of the crime."' *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)). The court thus must give "considerable

deference to the jury's verdict." *Dewberry*, 790 F.3d at 1028 (internal quotation marks and citation omitted).

Ultimately, the crux of the case was the credibility of the defendant's contentions that he was acting in good faith and without ill intent when he obtained a driver's license issued in his brother's name, that he did not try to hinder his deportation, and did not intend to make false statements to Homeland Security Officers.

The jury appropriately weighed the credibility of the witnesses and assessed the evidence. The jury determined that reasonable doubt existed as to Count 5, the false statement charge. However, the jury also determined that Etenyi was guilty on the other three counts, and, as the court indicated during trial, this assessment would not be invalid given the state of the evidence. The jury could reasonably have determined, given the testimony of the KDOR driver's license examiners and the exacting nature of the application process, that the defendant's testimony simply was not credible. Similarly, the jury could have reasonably determined that the defendant had indeed acted to hinder his deportation in failing to assist in supplying his passport to Homeland Security.

The defendant additionally argues in his post-trial motion that the jury could not reasonably convict him of obstructing his removal from the United States under Count 4. (Dkt. 77, at 3). In support of this argument, the defendant stresses testimony from ICE Agent Andrew Kishlock indicating that, while defendant was in custody, he undertook to apply for a new passport, but that Kishlock never processed the application. The motion contends that the existence of such an application was complete surprise. (*Id.*)

6

The government's response indicates that the passport application, which was only partially completed, was in fact produced to the defendant. (Dkt. 78 at 6 (including Bates number citations). Moreover, Kishlock testified that such a written application, even if completed, would not have been accepted by the Kenyan embassy, which indicated that only online applications would be considered.

More fundamentally, the defendant was not charged with violating 8 U.S.C. § 1253(a)(1)(B), which prohibits refusing to "make timely application in good faith for travel or other documents necessary for the alien's departure."  Rather, the Indictment charges the defendant with violating § 1253(a)(1)(C), which broadly prohibits "any … action … designed to prevent or hamper … the alien's departure." The statute creates a broad obligation for a removable alien to avoid hindering the departure process, and has been found applicable in a wide variety of circumstances, from physical resistance to the making of false or misleading statements. *Cf. United States v. Mola*, 598 Fed.Appx. 416 (6th Cir. 2015) (defendant refused being handcuffed*); United States v. Talbot*, 22 F.Supp.3d 419, 424 (M.D. Pa. May 20, 2014) (defendant refused to leave vehicle in which agents drove him to the airport, and indicated that he would "defend himself" if necessary), *aff'd* 611 Fed.Appx. 74 (3d Cir. 2015); *United States v. Diallo*, 569 Fed.Appx. 221, 222 (6th Cir.) (*per curiam*) ("[t]he jury was free to … infer that [defendant's] claim of Malian citizenship was nothing more than another attempt to delay or prevent his removal to the Central African Republic"); *United States v. Peynado*, 385 Fed. Appx. 97, 101-02 (3d Cir. 2010) ("The fact that [defendant about to be deported to Jamaica] made

7

false statements [of Haitiian] citizenhip brings his actions within 8 U.S.C. § 1253(a)(1)(C)").

Here, having found the receipt for a renewed passport in his residence, the agents knew that the defendant had a recently-issued, valid Kenya passport. There was additional evidence from which the jury could reasonably determine that the defendant issued a series of misleading statements to immigration agents in order to delay or hamper his deportation. The fact that the defendant, while in custody, also partially completed a written form for yet another passport does not negate the violation established by his failure to help the agents locate his existing passport. This is especially true in light of the evidence from Agent Kishlock that the Kenyan embassy affirmatively indicated that it would not accept such a written application.

Finally, the defendant argues that the Instructions issued by the court as to Count 4 were improper, as they did not specify the particular means of hampering as alleged in the Indictment—that the defendant "did not make available the identification documents necessary for his removal, such as his Kenyan passport." The court finds no basis for an award of a new trial. A defendant is entitled to a new trial on the grounds of constructive amendment "if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir.1988).

Here, no meaningful variance exists between the Indictment and the case tried to the jury; the defendant was convicted of the offense based on the conduct charged in

8

the indictment. As to the claim of hampering deporation, the government's evidence at trial and its argument to the jury were exactly the same: the defendant refused to make his existing Kenyan passport available to the agents seeking his removal. The defendant was not charged with one crime and convicted of another.

IT IS ACCORDINGLY ORDERED this 1st  day of November, 2016, that the defendant's Motions for Acquittal and to Dismiss (Dkt. 63, 64, 65) and for Judgment Notwithstanding the Verdict or for New Trial (Dkt. 77) are hereby denied.

   s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE